Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Steven Goldberg*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Goldberg,<br><br>             Plaintiff,<br><br>      v.<br><br>The Hartford Life and Accident Insurance Company; Group Long Term Disability, Life and Supplemental Life Plan for Employees of AZPB LP DBA Arizona Diamondbacks; AZPB LP DBA Arizona Diamondbacks,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Steven Goldberg (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

## *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant AZPB LP DBA Arizona Diamondbacks (hereinafter referred to as the "Company") sponsored, administered and purchased a group life insurance policy (hereinafter referred to as the "Policy") which was issued and fully insured by The Hartford Life and Accident Insurance Company of America (hereinafter referred to as "Hartford").

4. The specific Hartford group life insurance Policy is known as Group Policy No.: GL-675067. The Company's purpose in purchasing the Policy was to provide life insurance coverage for its employees and their dependents.

5. Through the group life insurance Policy, Plaintiff was afforded life insurance coverage for himself and his family/dependents, and the Policy contained a feature which waived any premiums due on the Policy (hereinafter referred to as the "Group Life Insurance Premiums Waiver benefit") if Plaintiff is found to meet the definition of Disabled in the Policy, as is more specifically pled *infra*.

6. Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Group Long Term Disability, Life and Supplemental Life Plan for Employees of AZPB LP DBA Arizona Diamondbacks (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.

7. At all times relevant hereto, the Plan constituted an ERISA "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

8. Upon information and belief, Hartford functioned as the claim administrator of the Plan and Policy.

9. Pursuant to the relevant ERISA regulation, the Company, and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Hartford.

10. Hartford also operated under a structural financial conflict of interest because it fully insured the Policy, and administered Plaintiff's claim for the Group Life Insurance Premiums Waiver benefit.

11. In administering Plaintiff's claim, Hartford operated under dual and conflicting roles as the decision maker with regard to whether Plaintiff was disabled, and the provider/payor of benefits if it found he was disabled.

12. Hartford's conflict of interest existed and manifested because if it found Plaintiff was disabled, it was then financially liable to provide life insurance coverage for Plaintiff and to his family/dependents and to pay any claims made, while also waiving any premiums due on the Policy.

13. The Company, Hartford and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

14. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

15. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy, and a "participant" as defined by 29 U.S.C. §1002(7).

16. Plaintiff seeks the continuation of his group life insurance coverage for himself and his family/dependents and Group Life Insurance Premiums Waiver benefit from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C.

§1132(a)(1)(B), as well as any other employee benefits he may be entitled to from the Plan, any other Company Plan, and/or from the Company itself as a result of being found disabled in this action.

17. After working for the Company as a loyal employee in the occupation of a Senior Manager Graphics and Signage, Plaintiff became disabled from working in that occupation, and also disabled from working in any occupation on or about December 17, 2007.

18. Plaintiff has remained continuously totally disabled from working in any occupation since December 17, 2007 due to his medical conditions.

19. Following the onset of his disability, Plaintiff filed a claim for the Group Life Insurance Premiums Waiver benefit under the relevant Policy, which was entirely administered by Hartford.

20. Hartford made every decision regarding whether Plaintiff was disabled pursuant to the terms of the relevant Policy.

21. Upon information and belief, the relevant Policy's definition of disability governing Plaintiff's Group Life Insurance Premium Waiver claim is as follows:

> "Disabled means that You have a condition that prevents You from doing *any work* for which You are or could become qualified by education, training or experience and it is expected that this condition will last for at least nine consecutive months from Your last day of work as an Active Full-time or Part-time Employee; or You have been diagnosed with a life expectancy of 12 months or less." (emphasis added)

22. In support of his claim, Plaintiff submitted to Hartford medical and other reliable, compelling evidence to support his allegation that he met the definition of Disabled as defined in the relevant Policy.

23. In a letter dated December 23, 2008, Hartford informed Plaintiff it was approving his Group Life Insurance Premium Waiver claim and provided life insurance

-4-

coverage for Plaintiff and his family/dependents, while also waiving any premiums due on the Policy, through March 27, 2017.

24. Plaintiff also filed a claim for long-term disability benefits made under a group long-term disability policy that was fully insured and administered by Hartford.

25. Hartford approved Plaintiff's long-term disability claim and paid him long-term disability benefits for almost ***9 years***, from June 14, 2008 through March 14, 2017, when Hartford terminated his long-term disability benefits after concluding he was capable of performing the Essential Duties of his prior occupation.

26. During the period of time Plaintiff's Group Life Insurance Premium Waiver claim was approved, he applied for Social Security disability benefits with the Social Security Administration (hereinafter referred to as the "SSA").

27. Plaintiff's claim for Social Security disability benefits was approved by SSA. Plaintiff is currently receiving Social Security disability benefits and has been receiving those benefits since June 2008.

28. The medical and other evidence in Plaintiff's Social Security disability claim was so persuasive, the SSA rendered a Fully Favorable determination (approval) in his claim based on the evidence alone, and without Plaintiff needing to appear or testify before an Administrative Law Judge.

29. After reviewing the medical and other evidence in Plaintiff's SSA claim file, the SSA found Plaintiff's disabling medical conditions are so severe they preclude him from working in *any occupation* that may exist in the national economy as of December 17, 2007. This date is essentially the same date Plaintiff alleged he became disabled in his Group Life Insurance Premium Waiver claim.

30. During the time his Group Life Insurance Premium Waiver claim was approved, Plaintiff submitted to Hartford a copy of the September 16, 2008 "Notice of Award" confirming the approval of his SSA disability claim from the SSA.

31. Hartford failed to properly and adequately investigate Plaintiff's claim by failing to obtain a copy of Plaintiff's Social Security disability claim file and/or request for Plaintiff to submit a copy of his Social Security disability claim file, when Ninth Circuit case law and ERISA required that the SSA's approval of his claim be considered.

32. SSA's definition of disability (i.e. that Plaintiff must be disabled from working in "any occupation") is similar, if not identical to the definition of Disabled (referenced in paragraph 21) in the Hartford Policy.

33. SSA's review of Plaintiff's claim and conclusion that Plaintiff is disabled from working in literally *any occupation* is highly relevant, probative conflict of interest evidence for this Court to consider with regard to the unreasonableness and implausibility of Hartford's contrary decision to terminate Plaintiff's Group Life Insurance Premium Waiver benefit after it found he was able to return to work, notwithstanding the fact it previously found he was continuously disabled and unable to work in any occupation for almost **_9 years_**.

34. In a letter dated March 27, 2017, Hartford informed Plaintiff it was terminating his Group Life Insurance Premium Waiver benefit claim after it concluded, "…[we] have determined that the documentation submitted in support of your claim does not establish that you meet the Policy's definition of Disabled."

35. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Hartford's March 27, 2017 determination, and submitted reliable and compelling, additional medical and non-medical evidence supporting his appeal and his allegation that he continues to be disabled and meets the definition of Disabled as set forth in the Policy.

36. In support of his claim, Plaintiff submitted to Hartford a September 7, 2017 narrative letter authored by his treating board certified physician who concluded, "I feel that given the current status of [Plaintiff's] active medical conditions that (sic) he is currently unable to work."

37. Further supporting his claim, Plaintiff submitted a July 18, 2017 Independent Medical Examination report authored by a board certified neurologist, who after personally examining Plaintiff concluded, "…I believe at the present time [Plaintiff] will remain indefinitely unable to work in his prior occupation or any future work setting…Following my review of [Plaintiff's] medical records as well as the evaluation carried out today, I believe his overall medical conditions has (sic) deteriorated since 03/15/2017."

38. Plaintiff also submitted to Hartford a Functional Capacity Evaluation report dated May 24, 2017, wherein after an extensive three and a half hour clinical interview, physical examination and simulated workplace testing, a qualified physical therapist concluded, "…it is my professional opinion that, to a reasonable degree of medical probability, [Plaintiff] would be physically ***unable to perform any work*** including a job description at the ***sedentary work level*** on a full-time basis." (Original emphasis).

39. Further supporting his claim, Plaintiff submitted a Vocational Assessment (evaluation) dated September 11, 2017 and a Vocational Assessment Addendum dated October 20, 2017 from a certified vocational expert, who after personally interviewing Plaintiff and reviewing the relevant evidence in Plaintiff's claim, along with the definition of Disabled set forth in the Policy concluded, "[Plaintiff] is unable to work in any occupation which exists in the competitive national economy and he continues to meet Hartford's definitions of disability…"

40. Plaintiff also submitted updated medical records from each of his treating medical professionals, a list of his current medications as well as the side effects they cause and the significant negative impact they have on his ability to work in any occupation, and in any work environment.

41. Plaintiff also submitted to Hartford five (5) sworn affidavits authored by himself (three affidavits), his wife, and his long-time friend and previous co-worker. All Each confirmed Plaintiff is unable to work in any occupation and that his disabling medical

1 conditions had not improved in any meaningful way since the date he originally became
2 disabled.

3     42. All of the evidence Plaintiff submitted to Hartford was consistent in proving
4 that he is unable to work in *any occupation*, and that he meets the definition of Disabled as
5 set forth in the Policy.

6     43. Plaintiff submitted the same medical and non-medical evidence referenced
7 *supra,* to Hartford for consideration in his long-term disability claim.

8     44. In a letter dated February 28, 2018, Hartford informed Plaintiff that it found
9 he disabled met the definition of disability set forth in its group long-term disability policy,
10 and as a result, he was entitled to long-term disability benefits.

11     45. Plaintiff alleges the fact that Hartford approved his long-term disability claim
12 based on the same medical and non-medical evidence as was also submitted in his Group
13 Life Insurance Premium Waiver claim is relevant evidence for the Court to consider with
14 regard to the unlawfulness, unreasonableness, and implausibility of Hartford's subsequent,
15 and inconsistent denial of his claim for the Group Life Insurance Premium Waiver benefit.

16     46. Plaintiff alleges that Hartford's approval of his long-term disability claim is
17 evidence that its denial of his Group Life Insurance Premium Waiver claim was influenced
18 by its financial conflict of interest, as well as its desire to save money and to wrongfully
19 avoid its obligation to provide the financial security it promised to Plaintiff and his
20 beneficiaries.

21     47. As part of its review of Plaintiff's claim for the Group Life Insurance
22 Premium Waiver benefit, Hartford obtained medical records only "paper reviews" from
23 medical professionals of its choosing; Joshua F. Lewis, M.D., David Burke, M.D. and
24 Angelica Nangit, M.D.

48. Upon information and belief, Plaintiff asserts Drs. Lewis, Burke and Nangit are long time medical consultants and medical reviewers for Hartford and/or the disability insurance industry.

49. Due to their longtime relationship with Hartford and/or the disability insurance industry, Drs. Lewis, Burke and Nangit have conflicts of interest and incentives to protect their own consulting relationships with Hartford, and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Hartford, and which unreasonably and implausibility supported the denial of Plaintiff's claim.

50. Plaintiff asserts that in reviewing his claim and due to their extensive business relationships with the disability insurance industry and Hartford, Drs. Lewis, Burke and Nangit were not independent, objective or impartial with regard to the opinions they rendered regarding whether Plaintiff had any work limitations due to his medical conditions, or if he was disabled from working in any occupation due those conditions.

51. Implausibly and unreasonably, Drs. Lewis, Burke and Nangit, whose bias is palpable throughout their reports, are the only physicians who concluded Plaintiff could work and also the *only physicians who never personally examined or evaluated him.*

52. Hartford's denial of Plaintiff's claim based on Drs. Lewis, Burke and Nangit's paper reviews, and the opinions they rendered in their reports violates ERISA because Hartford's review was not "full and fair" as required by ERISA.

53. Prior to rendering its February 13, 2018 final denial in Plaintiff's claim, Hartford unlawfully never disclosed or shared with Plaintiff, or his treating medical professionals (critically, who had all examined/evaluated him personally and opined he was disabled and unable to work in any occupation), the medical records only "paper reviews" authored by its reviewing medical professionals, Drs. Lewis, Burke and Nangit.

54. ERISA and Ninth Circuit case law require Hartford to disclose these doctors' reports to Plaintiff and his treating medical professionals so they could respond to the reports. Hartford's disclosure of its doctors' reports would have allowed Plaintiff and his treating and examining medical professionals' to address the issues and/or deficiencies Hartford and its doctors' alleged existed in Plaintiff's claim, and that precluded Hartford from finding that he was disabled as defined in the Policy.

55. Hartford disclosure and sharing its medical records only "paper reviews" from its doctors during its review of Plaintiff's claim was critical because it would have allowed Plaintiff and his treating and evaluating medical/vocational professionals to respond to the reports, and the opinions rendered in the reports so they could address any issues and/or deficiencies Hartford and its reviewing medical professionals, Drs. Lewis, Burke and Nangit, believed existed in Plaintiff's claim, and in doing so it would have allowed Hartford to approve his claim rather than terminating and denying it.

56. Hartford's failure to provide Plaintiff and his treating medical professionals with its reviewing medical professionals' "paper review" reports before issuing its February 13, 2018 final denial was unlawful pursuant to ERISA and Ninth Circuit law, it was unreasonable, and not the action that an un-conflicted ERISA fiduciary would have taken who was similarly situated.

57. Hartford's failure to provide its reviewing medical professionals' reports to Plaintiff so he and his medical professionals could respond to them as he and they believed was necessary and appropriate, in order to provide Hartford with a full and complete picture of his disabling medical conditions and limitations, violated ERISA and is a breach of the fiduciary duty it owed him.

58. An un-conflicted fiduciary would have shared its reviewing medical professionals' reports with Plaintiff and his medical professionals so they could respond to them, and in being allowed to participate in Hartford's review process, Hartford would have

-10-

engaged Plaintiff in a dialogue so he could cure any alleged deficiencies that Hartford alleged existed in his claim.

59. If Hartford had engaged Plaintiff in a dialogue regarding any alleged deficiencies it alleged existed in his claim, Plaintiff and his medical professionals would and could have had an opportunity to perfect his claim as required by ERISA and Ninth Circuit law so his claim could have been approved rather than it being denied.

60. As set forth by Hartford in its February 13, 2018 final denial, the deficiencies it alleged existed in Plaintiff's claim were not inconsequential *to Hartford,* they were the rationale and basis supporting its denial of his claim.

61. As Plaintiff's ERISA fiduciary, and pursuant to Ninth Circuit law, Hartford was required to provide Plaintiff and his medical professionals with an opportunity to respond to its reviewing medical professionals' (Drs. Lewis, Burke and Nangit) reports as well as to know what Hartford believed were the alleged deficiencies in his claim at a time when it mattered to Plaintiff, which is *before* Hartford rendered its February 13, 2018 final denial.

62. Hartford's failure to provide Plaintiff and his treating medical professionals with the opportunity to respond to its reviewing medical professionals' reports is an ERISA procedural violation, and precluded Hartford from providing Plaintiff with a "full and fair" review as required by ERISA.

63. Hartford's action in not providing its reviewing medical professionals' reports to Plaintiff and his medical professionals violated ERISA and Ninth Circuit case law as held in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, ***another for the final denial***. They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer. The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' ***A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement***" (bold and emphasis added).

64. In a letter dated February 13, 2018, notwithstanding Plaintiff's aforementioned evidence which clearly proves he met and continues to meet the definition of disability in the Policy, and that his medical conditions have not improved in any way since he initially became disabled, Hartford informed Plaintiff it was denying his claim for the Group Life Insurance Premium Waiver benefit after it concluded, "We have completed our comprehensive appeal review…and determined that [Plaintiff] is not disabled as defined by the Policy."

65. In its final denial dated February 13, 2018, Hartford notified Plaintiff he had exhausted his administrative levels of review and that he could file a civil action lawsuit in federal court pursuant to ERISA.

66. In a letter dated July 2, 2018, following the termination of his claim, Plaintiff requested for Hartford to reopen his Group Life Insurance Premium Waiver claim to consider responses from his evaluating and treating medical professionals to Drs. Burke, Lewis and Nangit's medical records only paper review reports.

67. The evidence Plaintiff respectfully requested for Hartford to review proved that Hartford's own retained reviewing physicians provided restrictions and limitations to Hartford which ***proved*** that *Plaintiff met the definition of Disabled and was disabled as is set forth in the Policy.*

68. In a letter dated July 11, 2018, Hartford abdicated its ERISA fiduciary duty to Plaintiff by refusing to reopen Plaintiff's claim in stating, "…the administrative remedies provided by ERISA and the policy have been exhausted."

69. Hartford's February 13, 2018 final denial letter is clear evidence that it not only abused its discretion, but also that it breached its fiduciary duty to Plaintiff by failing to administer the claim in his best interests by failing to provide a "full and fair review" as required by ERISA.

70. During its review, Hartford either negligently, or intentionally committed numerous ERISA procedural violations as identified herein which paved the way and allowed Hartford to ignore ERISA's regulations and for it to deny Plaintiff's claim, notwithstanding the fact that ERISA's regulations were specifically enacted to protect employee/beneficiary's rights such as Plaintiff's.

71. Hartford's ERISA violations include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that he met the definition of Disabled in the Policy.

72. In evaluating Plaintiff's claim on appeal, Hartford owed him a fiduciary duty and had an obligation pursuant to ERISA to administer his claim "solely in [his] best interests and other participants" which it failed to do. [1]

73. Hartford failed to adequately investigate Plaintiff's claim and failed to engage him in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his claim/appeal and to afford him an opportunity to prove he is Disabled as that term is defined in the Policy.

74. Hartford's failure to investigate the claim and to engage in this dialogue, and failure to ask for and/or obtain the evidence it believed was necessary and critical to cure any deficiencies so Plaintiff could perfect and have his claim approved by Hartford, is particularly egregious given the nature and severity of Plaintiff's disabling medical

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

conditions which included objective medical findings as well as his subjective medical complaints which proved that he remains Disabled as defined in the Policy.

75. Hartford's failure to engage Plaintiff in a dialogue during its review of his claim is evidence that Hartford's biased review and denial of Plaintiff's claim was motivated and influenced by its financial conflict of interest.

76. Hartford's failure to engage him in a dialogue is also an ERISA procedural violation which violates Ninth Circuit case law, and evidence that he did not receive a "full and fair" review as required by ERISA.

77. Plaintiff asserts Hartford's review was neither full nor fair because it violated ERISA, specifically, 29 U.S.C. § 2560.503-1, and was an abuse of discretion for many reasons including, but not limited to: failing to credit Plaintiff's reliable evidence including not giving significant, or even proper weight to the SSA's decision to approve and continue paying his Social Security disability claim for eleven (11) years; by abdicating its ERISA fiduciary duty and retaining a biased third party vendor/company to be involved in the review of Plaintiff's claim; by failing to have Plaintiff's claim reviewed by a truly independent medical professional; by cherry picking and selectively reviewing Plaintiff's evidence in an effort to deny the claim; by failing to obtain an Independent Medical Examination or a Functional Capacity Evaluation when the Policy allowed for one because Plaintiff's disabling medical conditions, his subjective complaints and work limitations could not be easily and accurately understood with only a medical records "paper review," which raises legitimate questions about the thoroughness and accuracy of Hartford's review and its denials; by providing a biased and one sided review of Plaintiff's claim that failed to consider all the evidence submitted by him and/or by de-emphasizing medical and other evidence which supported Plaintiff's claim and its approval; by disregarding and/or failing to consider Plaintiff's disabling subjective and self-reported complaints/symptoms and limitations; by failing to consider the *combined effect* that all of his medical conditions and

resulting limitations documented in his medical evidence would have on his ability to work in any occupation as defined in the Policy; by failing to engage Plaintiff in a dialogue so he and his medical professionals could respond to Hartford's reviewing medical professionals' reports by submitting the necessary evidence to perfect his claim so he could prove that he is "Disabled" as that term is defined in the Policy; and by failing to consider the impact the side effects that Plaintiff's medications have on his ability to engage in any occupation as is defined in Policy.

78. Plaintiff asserts a reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest that manifested as a result of the dual roles Hartford undertook as the decision maker and the payor of benefits.

79. Hartford's conflict of interest provided it with a financial incentive to deny Plaintiff's claim, because every dollar it saved by not waiving the premium due on Plaintiff's life insurance Policy and avoiding paying for any potential future claim(s), represents a dollar in profit for Hartford.

80. Hartford's actions and ERISA violations are similar to the conflicted and unlawful review provided by another insurance company where the Ninth Circuit stated, **"The plan with a conflict of interests also has a financial incentive to cheat."** *Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958, 970 (9th Cir. 2011) (emphasis added).

81. Hartford's financial conflict of interest also manifested when it terminated and denied Plaintiff's claim for the Group Life Insurance Premium Waiver benefit because it saved itself from having to provide *hundreds of thousands of dollars* in life insurance coverage to Plaintiff and his family/dependents which was important to their financial and emotional security.

82. Plaintiff is entitled to discovery regarding Hartford's aforementioned conflicts of interest referenced herein, as well as the conflicts of interest of any third party vendor hired by Hartford and any medical professional retained by Hartford and/or Hartford's third party vendor to review Plaintiff's claim, and of *any* individual, medical professional or otherwise, who reviewed any evidence and/or participated in any way in the review of his claim.

83. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest, and/or of any ERISA procedural violation which may have impacted or influenced Hartford's decision to terminate and deny Plaintiff's claim.

84. With regard to whether Plaintiff meets the definition of Disabled set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Hartford as referenced herein are so flagrant they justify *de novo* review.

85. Regardless of the standard of review, Plaintiff is entitled to discovery regarding the conflicts of interest, bias and ERISA procedural violations referenced herein.

86. Plaintiff seeks any and all employee benefits he is due and owed in this lawsuit, including but not limited to, the reinstatement of the life insurance coverage he and his family/dependents had before Hartford denied his claim, the waiver of any premiums due on the aforementioned reinstated coverage, and any other benefit he may be entitled to and due from the Defendants as a result of being found disabled in this matter.

87. Plaintiff does not seek long-term disability benefits from Hartford in this action as his long-term disability claim has been approved and those benefits are being paid by Hartford.

88. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to the reinstatement of his life insurance coverage for him and his family/dependents, as well as any other non-

disability employee benefits he may be entitled to, including prejudgment interest, reasonable attorney's fees and costs from Defendants.

89.  Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for the losses he has incurred as a result of Defendants' termination and nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.  For an Order finding the evidence in Plaintiff's claim is sufficient to prove he meets the definition of "Disabled" set forth in the relevant Plan and/or Policy, and that Plaintiff is entitled to continued group life insurance coverage for himself and his family/dependents under the Policy and the Group Life Insurance Premium Waiver benefit, and any other employee benefits he may be entitled to as a result of that Order, from the date he was first denied these benefits through the date of judgment with prejudgment interest thereon;

B.  For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits, and other benefits he is entitled to until such a time as he meets the conditions for the termination of benefits;

C.  For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.  For such other and further relief as the Court deems just and proper.

DATED this 1st day of March, 2019.

SCOTT E. DAVIS. P.C.

By:  */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff